UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANDREW E. ROTH derivatively on behalf of,
BEACON POWER CORPORATION,

                     Plaintiff,                05 Civ. 10466 (RPP)

      vs.

                               **OPINION AND ORDER**

PERSEUS, L.L.C., <u>et al.</u>,

                 Defendants.
-----------------------------------------------------------X


ROBERT P. PATTERSON, JR., U.S.D.J.

       Plaintiff is the owner of Common Stock of Beacon Power Corporation

("Beacon").  Plaintiff's Amended Complaint alleges that Defendants, Perseus, L.L.C.

("Perseus"); Perseus Capital, L.L.C. ("Perseus Capital"); Perseus 2000 Expansion, L.L.C.

("Perseus Expansion");[1] Perseus Investors Group,[2] L.L.C. ("Perseus Investors"); Frank

Pearl (Chairman and CEO of Perseus and member of Perseus Investors); and John Does

1-20 (members of or investors in Perseus, Perseus Capital, Perseus Expansion, or Perseus

Investors), as a group beneficially owned greater than ten percent of the Beacon common

stock, and acting as a group as defined under SEC Rule 16a-1 garnered short-swing

profits disgorgeable to Beacon under Section 16(b) of the Securities and Exchange Act of

1934 ("the Exchange Act").  Defendants filed a motion on March 20, 2006 moving to

dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative for

summary judgment asserting that the transactions are exempt under SEC Rule 16b-

3(d)(1).  Plaintiff opposes Defendants' motion and has asked that the Court not consider

---

[1] Perseus Expansion and Perseus Capital are each managed by Perseus and focus on similar investment strategies, namely mid and late- staged venture investments.  Pl. Am. Compl. ¶¶ 4-5.
[2] Perseus Investors is a member of Perseus Capital.  <u>Id.</u> ¶ 6.

Defendants' summary judgment motion until the Plaintiff has had discovery pursuant to Fed. R. Civ. P. 56(f). See Ostrager Aff., attached to Pl. Mem. in Opp. For the reasons set forth below, Plaintiff's request for discovery pursuant to Fed. R. Civ. P. 56(f) is denied and Defendants' motion to dismiss is granted.

## I. BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint dated February 8, 2006:

1.[3] On April 22, 2005, Beacon entered into an Investment Agreement with Perseus Captial and Perseus Expansion ("the Investment Agreement"). Pursuant to the Investment Agreement: (i) Perseus Expansion agreed to purchase 1,666,667 shares of Beacon Common Stock; (ii) Perseus Expansion agreed to grant Beacon an option to sell to Perseus Expansion up to $1,500,000 of additional shares of Beacon Common Stock at a price of $0.84 per share (which amount of $1,500,000 of additional shares was subject to an additional increase of up to $1,500,000 of shares); (iii) Perseus Expansion committed to invest $1,500,000 in NxtPhase T&D Corporation ("NxtPhase"), a company controlled by affiliates of Perseus, which Beacon had agreed to acquire; Perseus Expansion was granted an option to make its investment in NxtPhase by acquiring additional shares and warrants of Beacon; (iv) Beacon granted Perseus Expansion a warrant to acquire 800,000 additional shares of Beacon Common Stock at an exercise price of $1.008 per share; (v) Perseus Expansion agreed to pay Beacon $1,400,000; and (vi) Perseus Capital agreed to pay $100,000 to Beacon in exchange for a two year

---

[3] Paragraphs numbered 1 through 13 correspond to paragraphs 14 through 27 in Plaintiff's Amended Complaint.

extension (until May 23, 2007) of the expiration date of an outstanding warrant to acquire 1,333,333 shares of Beacon Common Stock at an exercise price of $2.25 per share.

2.  On April 22, 2005, Beacon and NxtPhase entered into an Arrangement Agreement (the "Arrangement Agreement") pursuant to which Beacon agreed to acquire all of the outstanding shares of NxtPhase.  Beacon acquired the option to acquire NxtPhase from Perseus 2000, L.L.C., an affiliate of the defendants.  Perseus 2000, L.L.C. was the largest shareholder of NxtPhase.

3.  On April 25, 2005, Beacon filed a Current Report on Form 8-K reporting the Arrangement Agreement.  On May 2, 2005, Perseus Capital and Pearl filed an Amendment No. 3 to Schedule 13D ("Amendment No. 3") reporting the Investment Agreement.  In Amendment No. 3, each of Perseus Capital and Pearl reported beneficial ownership of 9,410,944 shares of Beacon Common Stock, representing 21.6 % of Beacon's outstanding shares.

4.  On May 24, 2005, pursuant to the Investment Agreement, (i) Perseus Expansion acquired 1,666,667 shares of Beacon Common Stock; (ii) Perseus Expansion acquired a warrant to acquire 800,000 additional shares of Beacon Common Stock at an exercise price of $1.008 per share; (iii) Perseus Expansion paid Beacon $1,400,000; and (iv) Perseus Capital paid $100,000 to Beacon in exchange for a two year extension (until May 23, 2007) of the expiration date of an outstanding warrant to acquire 1,333,333 shares of Beacon Common Stock at an exercise price of $2.25 per share.

5.  On June 2, 2005, Perseus Capital, Perseus Expansion and Pearl filed an Amendment No. 4 to Schedule 13D ("Amendment No. 4") reporting the closing of the transactions under Investment Agreement on May 24, 2005.  In Amendment No. 4,

Perseus Capital reported beneficial ownership of 9,155,684 shares of Beacon Common Stock, Perseus Expansion reported beneficial ownership of 2,466,667 shares of Beacon Common Stock, and Pearl reported beneficial ownership of 11,622,351 shares of Beacon Common Stock, representing 26.6% of Beacon's outstanding shares. Amendment No. 4 further discloses that "The members of Perseus Capital and Perseus 2000 Expansion have the right to participate in the receipt of dividends from, or proceeds from the sale of, the shares of Common Stock held for the account of Perseus Capital and Perseus 2000 Expansion, respectively, in accordance with their membership interests in Perseus Capital and Perseus 2000 Expansion."

6. On June 13, 2005, pursuant to the Investment Agreement, (i) Perseus Expansion acquired 595,238 shares of Beacon Common Stock; (ii) Perseus Expansion acquired a warrant to acquire 138,636 additional shares of Beacon Common Stock at an exercise price of $1.008 per share; and (iii) Perseus Expansion paid Beacon $500,000. These transactions were first reported by Beacon in a Current Report on Form 8-K filed on June 17, 2005.

7. On July 21, 2005, pursuant to the Investment Agreement, (i) Perseus Expansion acquired 595,238 shares of Beacon Common Stock; (ii) Perseus Expansion acquired a warrant to acquire 138,636 additional shares of Beacon Common Stock at an exercise price of $1.008 per share; and (iii) Perseus Expansion paid Beacon $500,000. These transactions were first reported by Beacon in a Current Report on Form 8K filed on July 26, 2005.

8. On July 26, 2005, pursuant to the Investment Agreement, (i) Perseus Expansion acquired 1,785,714 shares of Beacon Common Stock; and (ii) Perseus

Expansion paid Beacon $1,500,000. These transactions were first reported by Beacon in a Current Report on Form 8-K filed on July 29, 2005.

9. On August 24, 2005, Perseus Capital distributed 4,000,000 shares of Beacon Common Stock to its members. Perseus Investors, as a member of Perseus Capital, received 332,549 shares of the 4,000,000 shares in the distribution. On August 25, 2005, Perseus Investors sold 332,549 shares at price per share of $4.5885. The distribution by Perseus Capital of 4,000,000 Beacon shares and the sale by Perseus Investors were reported by Perseus Capital, Perseus Expansion and Pearl in an Amendment No. 5 to Schedule 13D ("Amendment No. 5") filed on August 30, 2005. In Amendment No. 5, Perseus Capital reported beneficial ownership of 5,155,684 shares of Beacon Common Stock, Perseus Expansion reported beneficial ownership of 5,720,129 shares of Beacon Common Stock, and Pearl reported beneficial ownership of 10,875,813 shares of Beacon Common Stock, representing 21.1% of Beacon's outstanding shares. Amendment No. 5 further discloses that "The members of Perseus Capital and Perseus 2000 Expansion have the right to participate in the receipt of dividends from, or proceeds from the sale of, the shares of Common Stock held for the account of Perseus Capital and Perseus 2000 Expansion, respectively, in accordance with their membership interests in Perseus Capital and Perseus 2000 Expansion."

10. From January 1, 2005 through July 31, 2005, the high and low closing prices of Beacon Common Stock on the Nasdaq SmallCap Market were $1.45 and $0.62, respectively. From August 1, 2005 through August 31, 2005, the high and low closing prices were $4.74 and $1.66, respectively. The highest intraday price was $5.35, which occurred on August 24, 2005, the day that Perseus Capital distributed 4,000,000 shares to

its members.  On December 7, 2005, the closing price of Beacon Common Stock was $2.09.  On August 24, 2005 and August 25, 2005, the daily trading volumes for Beacon Common Stock were in excess of 40 million shares, multiples higher than the historical trading volume for the stock.

11.  On September 29, 2005, Beacon filed a preliminary proxy statement with the Securities and Exchange Commission.  The proxy statement was to be issued to Beacon's shareholders in order to obtain shareholder approval of Beacon's acquisition of NxtPhase under the Arrangement Agreement.  In the preliminary proxy statement, Beacon disclosed the following:

> Some of NxtPhase's directors, executive officers and shareholders have agreements or arrangements that provide them with interests in the plan of arrangement that are different from, or in addition to, your interests.

> In particular, Perseus, L.L.C. and its affiliates are significant stockholders of both Beacon and NxtPhase, and have representatives on both companies' boards of directors.  Entities affiliated with Perseus, L.L.C. own, as of the respective NxtPhase and Beacon record dates, approximately 48% of NxtPhase's outstanding common stock, 52% of NxtPhase's outstanding Class A preferred stock, and        % [sic] of Beacon's outstanding common stock.  Following the consummation of the plan of arrangement, these Perseus entities will receive approximately 8.9 million shares of Beacon common stock, or approximately 47% of the total Beacon shares expected to be issued in the plan of arrangement to NxtPhase stockholders, not including the Beacon restricted stock units to be issued to NxtPhase employees.  Perseus will own approximately        % [sic] of Beacon's outstanding common stock after the plan of arrangement is completed.

> Based on the one-day volume weighted average price of Beacon common stock on April 22, 2005, the date the arrangement agreement was signed, or $0.8548, the value of the shares to be issued to entities affiliated with Perseus, L.L.C. for its ownership of approximately 48% of NxtPhase's outstanding common stock and 52% of NxtPhase's outstanding Class A preferred stock will be approximately $7.6 million. Based on the closing price of Beacon stock of $3.67 on September 12, 2005, the value of the shares to be issued to entities affiliated with

Perseus, L.L.C. for its ownership interest of NxtPhase stock is approximately $32.7 million. According to an independent valuation report of NxtPhase prepared on March 18, 2005 by Evans & Evans, Inc., the fair market value of 100% of the issued and outstanding shares of NxtPhase as of December 31, 2004 is in the range of $7,760,000 to $8,930,000. See "Beacon and NxtPhase Proposal No. 1—The Plan of Arrangement—Opinions of Beacon's Financial Advisors—Evans & Evans, Inc.—Valuation Report on NxtPhase T&D Corporation" on page      [sic] of this joint proxy statement.

Preliminary Proxy Statement at pages 10-11.

12. On November 21, 2005, Perseus Capital distributed 3,502,351 shares of Beacon Common Stock to its members. Perseus Investors, as a member of Perseus Capital, received 291,177 shares of the 3,502,351 shares in the distribution. The distribution by Perseus Capital of 3,502,351 Beacon shares was reported by Perseus Capital, Perseus Expansion and Pearl in an Amendment No. 6 to Schedule 13D ("Amendment No. 6") filed on November 23, 2005. Amendment No. 6 further reports the unwinding of the Arrangement Agreement and the return to Beacon of 1,190,476 Beacon shares and warrants to purchase an additional 277,272 shares from Perseus Expansion in exchange for preferred stock of NxtPhase that Beacon had purchased pursuant to the Arrangement Agreement. Amendment No. 6 further discloses that "The members of Perseus Capital and Perseus 2000 Expansion have the right to participate in the receipt of dividends from, or proceeds from the sale of, the shares of Common Stock held for the account of Perseus Capital and Perseus 2000 Expansion, respectively, in accordance with their membership interests in Perseus Capital and Perseus 2000 Expansion."

13.  On November 23, 2005, Beacon issued a press release disclosing that Beacon and NxtPhase had terminated the Arrangement Agreement.  Beacon states the following in its press release:

> The arrangement agreement [sic] specified that the transaction would automatically terminate if not completed by December 31, 2005. Considering the status of the SEC review process and the limited time remaining until December 31, as well as the increase in Beacon's stock price since the signing of the agreement, it was determined that the transaction was unlikely to be completed.

14.  On November 28, 2005, Pearl filed a Statement on Form 4 reporting the sale on November 23, 2005 of 145,000 shares of Beacon Common Stock at a price per share of $1.8275.

The Amended Complaint then alleges that the Group Members acted in concert as a group to further their collective investment in the Company, and that the Group Members constitute a group for purposes of Sections 13(d)(3) and 16(b) of the Exchange Act.  See Am. Compl. ¶ 28.  According to the Amended Complaint, the Group Members used Perseus Capital and Perseus Expansion as their vehicle for their investment in the Company; certain Group Members joined in the filing of the Schedule 13D and Amendments Nos. 3 through 6; certain Group Members reported their beneficial ownership on Form 4s reflecting their group status; and certain Group Members were party to the Perseus Capital and Perseus Expansion limited liability company agreements governing their collective investment in the Company.  See id.

The Amended Complaint contains two claims for relief.  Plaintiff first requests that Perseus Investors disgorge to Beacon $408,852 in short-swing profits earned from Perseus Investors' August 25, 2005 sale of Beacon Common Stock.  Am. Comp. ¶ 33. Plaintiff also requests that Defendant Pearl disgorge to Beacon $186,325 in short-swing

profits earned from Pearl's sale of 145,000 shares of Beacon Common Stock on November 23, 2005. Id. ¶ 37.

The following facts relating to Defendants' claim of exemption under SEC Rule 16b-3(d)(1) are taken from Defendants' Local Civil Rule 56.1 Statement dated March 17, 2006 and are admitted in Plaintiff's Rule 56.1 Statement dated April 20, 2006:[4]

1.   Since 1997, Perseus, L.L.C. ("Perseus") has made various capital investments in Beacon through its affiliates Perseus Capital and Perseus Expansion.  Macklin Decl. ¶ 3; Stanton Decl. ¶ 2.

2.   As a result of these investments, in 1997 Perseus and its affiliates secured representation on Beacon's Board of Directors and appointed Kenneth M. Socha, Senior Managing Director of Perseus, and Philip J. Deutch, Managing Director of Perseus, to serve on Beacon's Board of Directors.  Macklin Decl. ¶ 3; Stanton Decl. ¶ 2.

3.   Socha and Deutch have not served on Beacon's Board of Directors prior to their appointment by Perseus.  Macklin Decl. ¶ 3; Stanton Decl. ¶ 2.

4.   Socha and Deutch served on Beacon's Board of Directors as designees of Perseus and its affiliates.  Macklin Decl. ¶ 3; Stanton Decl. ¶ 2; Ex. 3 at Item 1.01; Ex. 14 at Item 1.01; Ex 15 at Item 1.01.

5.   In addition to serving the interests of Beacon, while serving on Beacon's Board, Socha and Deutch represented the interests of Perseus and its affiliates and sought to protect those interests.  Macklin Decl. ¶ 4.

6.   In their capacity as Directors of Beacon, Soch and Deuch had access to confidential and proprietary information.  Macklin Decl. ¶ 5; Stanton Decl. ¶ 3.

---

[4] See Chambers v. Time Warner, 282 F.3d 147, 152 (2d Cir. 2002), *infra* Part A; see also In re Van der Moolen Holding N.V. Sec. Litig., 405 F. Supp. 2d. 388, 396 (S.D.N.Y. 2005), *infra* Part A.

7.   Socha and Deutch routinely shared with Perseus, the ultimate controlling entity of Perseus Capital and Perseus Expansion, the confidential and proprietary information they acquired in their capacity as Beacon Directors.  Macklin Decl. ¶ 5.

8.   Beacon understood that Socha and Deutch would share with Perseus and its affiliates the confidential and proprietary information they acquired in their role as Beacon Directors.  Stanton Decl. ¶ 3.

9.   Perseus and its affiliates drew on the confidential information supplied by Socha and Deutch in connection with its investments in Beacon and consulted with Socha and Deuch regarding those investments.  Macklin Decl. ¶ 5.

10.   The decision to invest in Beacon pursuant to the April 22, 2005 Investment Ageement (the "Investment Agreement") was made with the advice of Socha and Deutch, based upon the knowledge they acquired as Beacon directors.  Macklin Decl. ¶ 6.

11.   On April 21, 2005, Beacon's Board of Directors approved an Investment Agreement between Beacon, Perseus Capital, and Perseus Expansion.  Stanton Decl. ¶ 4, Ex. 1.                                    . . .

14.   Beacon's Board of Directors knew Socha and Deutch were appointees of Perseus and its affiliates when it approved the Investment Agreement.  Stanton Decl. ¶ 5.

Issues in Dispute

The only factual dispute between the parties concerns Plaintiff's allegations that the Defendants are members of a group and constitute a group for purposes of Sections 13(d)(3) and 16(b) of the Exchange Act.  In their motion to dismiss or for summary judgment, Defendants argue that Plaintiff fails adequately to state facts showing that Perseus Investors was a ten percent beneficial owner or that Perseus Investors specifically

formed an agreement with the other defendants for the purposes of acquiring Beacon securities. Def. Mem. at 9-12. Plaintiff asserts that the question of whether Defendants acted as a "group" in purchasing Beacon securities is a question of fact. Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl. Opp. Mem.") at 13 quoting <u>Morales v. Quintel Entertainment, Inc</u>., 249 F.3d 115, 124 (2d Cir. 2001) ("Whether the requisite agreement exists is a question of fact."). Since this is the only factual issue in dispute, the Court will assume for purposes of this motion only that the Defendants are members of a group pursuant to sections 13(d)(3) and 16(b) of the Exchange Act.

## II.  STANDARD OF REVIEW

A.  Rule 12(b)(6)

In reviewing a motion for dismissal pursuant to Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable references in the plaintiff's favor." <u>Chambers v. Time Warner</u>, 282 F.3d 147, 152 (2d Cir. 2002) (citations omitted). Dismissal pursuant to Rule 12(b)(6) is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." <u>Sweet v. Sheahan</u>, 235 F.3d 80, 83 (2d Cir. 2000). Accordingly, the Court should "merely . . . assess the legal feasibility of the complaint [and not] . . . assay the weight of the evidence which might be offered in support thereof." <u>Eternity Global Master Fund Ltd. v. Morgan Guar., Trust Co. of New York</u>, 375 F.3d 168, 176 (2d Cir. 2004) (internal quotations omitted).

However, a court may consider other documents "where the complaint 'relies heavily upon [their] term[s] and effect[s],' which renders the document[s] 'integral' to

the complaint." <u>Chambers</u>, 282 F.3d at 153, *quoting* <u>Int'l. Audiotext Network, Inc. v. Am. Tel. & Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1991).  Types of documents that a court may consider when deciding a 12(b)(6) motion include: "([1]) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, ([2]) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and ([3]) facts of which judicial notice may properly be taken under Rule 201[5] of the Federal Rules of Evidence."  <u>In re Van der Moolen Holding N.V. Sec. Litig.</u>, 405 F. Supp. 2d 388, 396 (S.D.N.Y. 2005) *citing* <u>In re Merrill Lynch & Co., Inc.</u>, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (footnotes omitted).  As the Second Circuit clarified in <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42 (2d Cir. 1991):

> A finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since . . . the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered[.]

949 F.2d. at 48.

As discussed in Part C, <u>infra</u>, Defendants rely on facts in their motion that are set forth in the Amended Complaint and disclosed in public filings with the SEC.  <u>See</u> Pl. Am. Comp., Def. Motions, SEC filings, discussed <u>infra</u>, in Part C.  Furthermore, Plaintiff filed a 56.1 Statement with this Court which does not dispute any of the facts that Defendants assert exempt them under Rule 16b-3.  Thus Plaintiff cannot argue that he did not have notice of those facts that Defendants present to this Court in their motion papers.

---

[5] Rule 201 states in pertinent part: "(a) Scope of rule.  This rule governs only judicial notice of adjudicative facts.  (b) Kinds of facts.  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  (c) When discretionary.  A court may take judicial notice, whether requested or not."  Fed. R. Evid. 201.

<u>See</u> Pl 56.1 Stmt. ¶ 1.  Accordingly, the Court takes judicial notice of those facts contained in Defendants' 56.1 Statement pursuant to Fed. R. Evid. 201, <u>supra</u> n. 5 and will treat Defendants' motion as one for dismissal pursuant for 12(b)(6) rather than as a motion for summary judgment.  <u>See</u> <u>Cortec</u>, 949 F.2d at 48.

## III.  DISCUSSION

### A.  Section 16(b) Insider Disgorgement

Section 16(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") requires certain beneficial owners of an issuer's securities to disgorge to the issuer any profits derived from short-swing trades involving the sale of those securities within six months of purchase.  Securities and Exchange Act of 1934 § 16(b), 15 U.S.C. § 78p(b) (2002) ("Section 16(b)").  Section 16(b) states:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement . . . involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months. . . . This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement . . . involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

Id.  The statue triggers strict liability for insiders engaging in short-swing trading regardless of the trader's intent, profit, or loss.  Morales, 249 F.3d at 121-22 (citing Gwozdzinsky v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998)).

## B.  Section 13(d) Group Liability and Beneficial Ownership

Liability under Section 16(b) attaches to beneficial owners who own more than ten percent of any class of securities.  SEC Rule 16a-1(a)(1), 17 C.F.R. § 240.16a-1 (1998) ("Rule 16a-1(a)(1)").  Rule 16a-1(a)(1) clarifies how to determine who is such a beneficial owner.  The Rule states: "the term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to Section 13(d) of the Act and the rules thereunder."  Id.  Securities Exchange Act § 13(d)(3) in turn provides:

> When two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a "person" for the purposes of this subsection.

15 U.S.C. § 78m(d)(3) (2002) ("Section 13(d)(3)").  To implement Section 13(d)(3), the Commission promulgated Rule 13d-5.  See Morales, 249 F.3d at 123.  Rule 13d-5 defines beneficial ownership by a "group" as follows:

> When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) and (g) of the Act, as of the date of such agreement, of all equity securities of that issuer beneficially owned by any such persons.

17 C.F.R. § 240.13d-5(b)(1) (2006) ("Rule 13d-5").

As stated in Part II, supra, for purposes of this decision, the Court is assuming defendants constitute a group as alleged in the Amended Complaint.

## C. SEC Rule 16b-3(d)

Certain transactions are exempt from Section 16(b) liability. SEC Rule 16b-3 exempts transactions "between the issuer … and an officer or director of the issuer." 17 C.F.R. § 240.16b-3(d)(1) (2006) ("Rule 16b-3(d)(1)"). Rule 16b-3(d) states in pertinent part:

> Acquisitions from the issuer. Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if:
>
> (1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors;

Id. See Gryl Ex Rel. Shire Pharm. V. Shire Pharmaceuticals, 298 F.3d 136, 141 (2d Cir. 2002) (outlining three requirements for "Board Approval" exemption).

Defendants assert that Perseus and its affiliates are exempt under Rule 16b-3(d), because they are "directors by deputization"[6] of Beacon. Def's Reply at 2-3. Courts and the SEC, pursuant to Rule 16b-3(d)(1), have extended the deputization theory to exempt directors and the companies they represent from 16(b) liability. In Dreiling v. Am. Express Travel Related Servs. Co., Inc., 351 F. Supp. 2d 1077 (W.D. Wash. 2004), appeal docketed, No. 04-35715 (9th Cir. Aug. 2004), defendant Travel Related Services Co. ("TRS") became an insider because it "deputized [one of its executive officers] to represent its interests" as an unelected member on the board of directors of InfoSpace, a

---

[6] The Second Circuit initially used a deputization theory to apply Section 16(b) liability to a defendant corporation in Feder v. Martin Marietta Corp., 406 F.2d 260 (1969), cert. denied, 396 U.S. 1036 (1970). The court reasoned that a corporate officer's membership on the board of another corporation could be imputed to the deputizing corporation itself. Id. at 265. According to Feder, "the issue of deputization is a question of fact to be settled case by case and not a conclusion of law." Id. at 263 (citing Blau v. Lehman, 368, U.S. 403, 408-409 (1962)).

company in which plaintiff Dreiling was a shareholder.  351 F. Supp. 2d at 1079.  In

dismissing Dreiling's complaint seeking disgorgement of short-swing profits that TRS

earned from the sale of issuer Infospace's securities, the district court found that Rule

16b-3(d)(1) exempted TRS from Section 16(b) liability "because TRS, an insider,

acquired InfoSpace stock directly from the issuer with the approval of the issuer's board

of directors."  351 F. Supp. 2d at 1090.

Though the district court in <u>Dreiling</u> did not explicitly incorporate deputization

into its reasoning for finding TRS exempt, <u>see</u> <u>id.</u>, the SEC endorsed the doctrine in an

amicus brief it filed with the Ninth Circuit.  There, the SEC stated that Rule 16b-3 is

applicable to directors by deputization so long as the issuer is aware of the deputization.

<u>See</u> Brief of the SEC, amicus curiae, In Partial Support of Each Party, <u>Dreiling</u>, 351 F.

Supp. 2d 1077 (9th Cir. 2005) (No. 04-35715) ("SEC <u>Dreiling</u> Brief") at 21, 27.

According to the SEC, Rule 16b-3(d) does not prevent directors functioning "through

deputies" from claiming the director exemption as a matter of law.  <u>Id.</u>  Rather, the only

restriction the SEC calls for on availability of the exemption is awareness: "[T]he board

(or shareholders) approving an acquisition by a director operating through deputization

must be aware of the deputization[.]"  <u>Id.</u> at 21.  As Judge Straub stated in <u>Gryl</u>, the court

"must defer to the SEC's interpretations of its own regulations in its amicus briefs unless

they are plainly erroneous or inconsistent with the regulations."  <u>Gryl</u>, 298 F. 3d at 145.

In <u>Segan v. CDR-Cookie, Acquisitions</u>, 2006 WL 59550, No. 05 Civ. 3509

(S.D.N.Y. Jan. 4, 2006), Judge Sweet held that a Rule 16b-3 exemption applied where

"CDR Defendants acquired a controlling interest through holding nearly a third of

Convansys' [Plaintiff's corporation's] stock and that, in connection with this investment,

they secured the right to appoint three directors to its board." Id. at *6. "According to a public filing, this right was exercised to appoint three employees of CD & R entities to serve as Covansys directors." Id. Citing Feder, 406 F.2d 260, Judge Sweet held that "these alleged facts are sufficient to qualify the CDR Defendants as directors 'by deputization' for purposes of Section 16(b) and therefore entitle them to the Rule 16(b)-3 exemption." Id.

Here, Plaintiff does not dispute that Beacon was fully aware that Perseus, Perseus Expansion, and Perseus Capital all had representatives appointed as directors to serve on Beacon's board of directors. Def. 56.1 Stmt ¶¶ 2-9; see also Pl. 56.1 Stmt ¶ 1. Indeed, prior to the Defendants' sale of Beacon shares, Beacon disclosed this fact by submitting a preliminary proxy statement to the SEC on September 29, 2005. Am. Compl. ¶ 24. "In particular," the statement read, "Perseus, L.L.C. and its affiliates are significant stockholders of both Beacon and NxtPhase, and have representatives on both companies' boards of directors." Id.

Nor is there any dispute that the Defendants' directors on Beacon's Board were functioning as deputies of Perseus and its affiliates consistent with the doctrine of deputization developed in Feder and applied in Segan. In Feder, the court found deputization where defendant Martin Marietta placed its chief executive on the board of directors of Sperry Rand, in part, to "acquire inside information concerning Sperry and [to] utilize such data for Martin Marietta's benefit[.]" 406 F.2d at 264. Here, Socha and Deutch served on Beacon's Board of Directors as designees of Perseus representing and protecting the interests of Perseus and its affiliates. Def. 56.1 Stmt. ¶ 4-5. While on Beacon's Board, Socha and Deutch received confidential and proprietary information.

Id. ¶ 6.  They "routinely shared [the Beacon information] with Perseus, the ultimate

controlling entity of Perseus Capital and Perseus Expansion[.]"  Id.  ¶ 7.  Beacon, in turn,

"understood that Socha and Deutch would share with Perseus and its affiliates the

confidential and proprietary information they acquired in their role as Beacon Directors."

Id. ¶ 8.*

　　　In addition, the Investment Agreement bears a similar structure to the agreement

at issue in Segen, where the court found defendants "qualif[ied] . . . as directors 'by

deputization[.]'"  2006 WL 59550 at *6.  As in Segen, Defendants were more than ten

percent holders of Beacon's securities and had the right to appoint Perseus directors to

serve on Beacon's Board— appointments Beacon subsequently included in their

preliminary proxy statement.  Am. Compl. ¶ 24.  Accordingly, Defendants qualify as

directors by deputization for purposes of Rule 16b-3(d)(1).

## D.  Defendants' Status As Ten Percent Shareholders Does Not Disqualify Them From The Rule 16b-3(d)(1) Exemption.

　　　Plaintiff also argues that Defendants are still subject to Section 16(b) liability as

Rule 16b-3(d) does not explicitly exempt directors who hold more than ten percent of the

issuer's securities.  The SEC has clarified that courts are free to extend Rule 16b-3(d)(1)

exemptions to such directors.  As the Commission explained in its 1996 Release:

> 　　　[N]ew Rule 16b-3 does not provide an exemption for persons who
> are subject to Section 16 solely because they beneficially own greater than
> ten percent of a class of an issuer's equity securities.  Officers and
> directors owe certain fiduciary duties to a corporation. . . . Such duties,
> which act as an independent constraint on self-dealing, may not extend to
> ten percent holders.  The lack of other constraints argues against making
> new Rule 16b-3 available to ten percent holders.  However, new Rule 16b-
> 3 is available to such a person who is also subject to Section 16 by virtue
> of being an officer or director with respect to transactions with the issuer.

_____

* Plaintiff seeks no discovery on this issue.

Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 37,260, 61 Fed.Reg. 30,376, 30,379 at n. 42 (May 31, 1996) ("1996 Release") (emphasis added); <u>see also</u> <u>Segen</u>, 2006 WL 59550 at *7. Accordingly, it is the transaction originating with the issuer and the fiduciary duties placed on corporate directors that provide the necessary safeguards against abuse of insider information. That such directors—whether by deputization or otherwise—may <u>also</u> be ten percent holders of the issuer's securities does not diminish those duties.

Furthermore, the SEC's 1996 Release is consistent with its prior interpretation of Section 16(b). <u>See</u> <u>Gryl</u>, 298 F.3d at 145. In essence, Section 16(b) exists to guard against those transactions "rooted in inequality of information between persons who are aware of it and the persons they transact with." SEC Release No. 34-52202, 70 Fed. Reg. 46080 at 46083, n. 52 (Aug. 11, 2005). The SEC created the 16b-3(d)(1) exemption specifically because transactions in which the issuer is aware of the deputization, as in the instant case, guard against the risk that "any profit obtained is not at the expense of uniformed shareholders and other market participants of the type contemplated by [Section 16(b)]." 1996 Release at 30377, n. 16.

Whether the deputized director is also a ten percent holder of the issuer's securities does not bear on the issuer's awareness of the transaction.[7] As the Second Circuit clarified in <u>Gryl</u>:

> So long as the relevant securities transaction is between an issuer and insider, and so long as the terms and conditions of that transaction receive advance approval by the board of directors, there exists sufficient

---

[7] The parties do not dispute that Defendants were more than ten percent holders of Beacon's securities. <u>See</u> Pl. Opp. Mem. at 16-19; <u>see also</u> Def. Reply at 4-6. In fact, it is based on this status that Plaintiff asserts Defendants' liability. <u>See</u> Pl. Opp. Mem. at 16-19.

> protection to ensure that any short-swing profit taking that follows is not
> the result of unfair market manipulation.

298 F.3d at 145-46. Despite Plaintiff's contentions to the contrary, Pl. Opp. Mem. at 18, extending the Rule 16b-3 exemption to cover directors who are ten percent holders would not hinder the policies underlying Section 16(b). Nor did the SEC restrict its reading of Rule 16b-3(d)(1) to directors who are less than ten percent holders when the Commission revisited the Rule in its <u>Dreiling</u> amicus brief. <u>See</u> SEC <u>Dreiling</u> Brief at 21-27.

As discussed in <u>Segen</u>, <u>supra</u>, Judge Sweet recently found that the 16b-3(d)(1) exemption applied to CDR Defendants who had deputized directors on Plaintiff Covansys's board of directors and held "nearly a third of [Plaintiff's corporation's] stock[.]" <u>Segen</u>, 2006 WL 59550 at *6-7. Here, the Defendants had deputized directors on Beacon's Board as early as 1997. Def. 56.1 Stmt. ¶ 2. Accordingly, Defendants are exempt under Rule 16b-3(d)(1). <u>See Segen</u>, 2006 WL 59550 at *7.

Plaintiff contends that Rule 16b-3 is an invalid exercise of the SEC's rulemaking authority. However, Section 16(b) "expressly confers on the SEC the authority to enact rules or regulations exempting transactions from the reach of the statute 'as not comprehended within the purpose' of the statute." <u>Segen</u>, <u>id.</u> at *5, quoting 15 U.S.C. § 78(b) (2005); <u>see</u> SEC <u>Dreiling</u> Brief at 6-11. As the SEC's interpretations of Rule 16b-3 "are [not] plainly erroneous or inconsistent with the regulations," <u>Gryl</u>, 298 F.3d at 145, Rule 16b-3 is valid.

**E.  Discovery Under Rule 56(f) Is Not Required Because Defendants Are Exempt Under Rule 16b-3(d)(1).**

Since Defendants have been treated as a group for purposes of Section 13(d) as Plaintiff contends, there is no need for the Court to order the discovery that Plaintiff seeks under Rule 56(f).  For the Court to order discovery pursuant to Fed. R. Civ. P. 56(f) as Plaintiff requests, it must appear "from the affidavits of a party opposing the motion [Defendants' motion for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition[.]"  Fed. R. Civ. P. 56(f) (2006).  For a plaintiff to show that he needs discovery in order to defeat a defendant's motion, the plaintiff must submit an affidavit showing "'(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort has been made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'"  Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) (citing Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995)) (quoting Hudson River Sloop Clearwater, Inc. v. Department of Navy, 891 F.2d 414, 422 (2d Cir. 1989).

Here, Plaintiff's Rule 56(f) Affidavit does not indicate how the additional materials Plaintiff seeks through discovery would create a dispute over a genuine issue of material fact.  Specifically, Plaintiff seeks details relating to "a) the negotiations between defendants and Beacon . . . for the Investment Agreement[,] . . . b) The distributions to Perseus Capital's members of Beacon securities in August and November 2005 and the identities of the members of Perseus Capital who received the Beacon stock; c) Perseus Investors sale on August 25, 2005 of 332,549 shares of Beacon common stock; . . . f) the pecuniary interest that each of the defendants has in the profits to be disgorged; [and] g)

what information Beacon's board of directors had before it when approving this transaction and their reasons for doing so. Affidavit of Glenn F. Ostrager (Apr. 20, 2006) ¶ 3. Plaintiff, in citing Morales, 249 F.3d at 124, states that whether Defendants acted as a "group" in purchasing Beacon securities is a question of fact. The Court has assumed the Plaintiff's position is correct and has concluded that Defendants are exempt under 16b-3(d)(1). Discovery is therefore unnecessary as to that issue.

Moreover, it is unclear to the Court how Plaintiff's discovery request, if granted, would generate any issue of material fact in this case, as Defendants do not dispute 1) any aspect of the Investment Agreement, Defs' 56.1 Stmt ¶ 12, 2) that Perseus and its affiliates secured representation on Beacon's Board of Directors in 1997, id. at ¶¶ 2-10, and 3) that Defendants were more than ten percent owners of Beacon as a result of the Investment Agreement. Id. at ¶ 12. Accordingly, Plaintiff's discovery request pursuant to Rule 56(f) is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's request for discovery pursuant to Fed. R. Civ. P. 56(f) is denied and Defendant's motion to dismiss is granted.

IT IS SO ORDERED.

Dated: New York, New York
July **2Ⅰ**, 2006

Robert P. Patterson, Jr.
U.S.D.J.

22

Copies of this Opinion and Order sent to:


*Counsel for Plaintiff*:

Ostrager Chong Flaherty & Broitman, P.C.
By: Glenn F. Ostrager
250 Park Avenue, Suite 825
New York, NY 10177-0899
Tel: (212) 681-0600
Fax: (212) 681-0300

Bragar Wexler Eagel & Morgenstern, P.C.
By: Paul D.Wexler
885 Third Avenue
New York, NY 10022
Tel: (212) 308-5858
Fax: (212) 486-0462

*Counsel for Defendants*:

Williams & Connolly LLP
By: Gerson A. Zweifach
725 12th Street, NW
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029